**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**(White Plains)**

YAAKOV LOEFFLER, individually and on
behalf of all others similarly situated,

Plaintiff,

-against-

WONG FLEMING, P.C.,

Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT WONG FLEMING, P.C.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

WONG FLEMING, P.C.
821 Alexander Road, Suite 200
Princeton, NJ 08540
Tel: (609) 951-9520
Fax: (609) 951-0270
Email: dstokes@wongfleming.com
*Attorneys for Defendant Wong Fleming, P.C*

Dafney Dubuisson Stokes, Esq.
Of Counsel and on the Brief.

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL & PROCEDURAL BACKGROUND ........................................................ 1

LEGAL ARGUMENT.............................................................................................. 3

    I.    Applicable Legal Standards .................................................................. 3

        A.   Motion to Dismiss........................................................................ 3

        B.   FDCPA and CFPB ....................................................................... 4

    II.   Neither the FDCPA nor the CFPB Regulation F Require the Validation Notice Bear its Mailing Date ...................................................................................... 8

    III.  The CFPB Regulation F Provides a Safe Harbor for Debt Collectors Utilizing the Model Form B-1 ............................................................................................. 9

CONCLUSION....................................................................................................... 9

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955, 1964 (2007) ........................................................................... 3, 4

Greco v. Trauner, Cohen & Thomas, L.L.P.,
    412 F.3d 360, 363 (2d Cir. 2005) ...................................................................... 6

Kropelnicki v. Siegel,
    290 F.3d 118, 127 (2d Cir. 2002) ...................................................................... 4

Ostrander v. Unifund Corp.,
    2008 U.S. Dist. LEXIS 25040, *4-5 (W.D.N.Y. Mar. 28, 2008) ...................... 4

Phillips v. County of Allegheny,
    515 F.3d 224, 233 (3d Cir. 2008) ...................................................................... 3

Wagner v. Chiari & Ilecki, LLP,
    973 F.3d 154, 165 (2d Cir. 2020) ...................................................................... 5

**Statutes**

12 U.S.C. § 5511 ........................................................................................................ 6

12 U.S.C. § 5512 ........................................................................................................ 1, 6

12 U.S.C. § 5532 ........................................................................................................ 1, 6, 7, 9

15 U.S.C. § 1692 ........................................................................................................ 4

15 U.S.C § 1692d ....................................................................................................... 5

15 U.S.C. § 1692e ....................................................................................................... 5

15 U.S.C. § 1692f ....................................................................................................... 5

15 U.S.C. § 1692g ...................................................................................................... Passim

15 U.S.C. § 1692k ...................................................................................................... 7, 9

iii

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 3

**Regulations**

12 CFR 1006.1 ................................................................................................................ 7

12 CFR 1006.34 ..................................................................................................... 1, 7, 8

12 CFR Part 1006 Appendix B ................................................................................. 1, 7

**PRELIMINARY STATEMENT**

Defendant Wong Fleming, P.C. ("Defendant") was retained by non-party KeyBank National Association ("KeyBank") in the collection of the KeyBank debt account of Plaintiff Yaakov Loeffler ("Plaintiff"). In connection with this representation and as required by Federal law, including 15 U.S.C. § 1692g and 12 CFR 1006.34, Defendant mailed to Plaintiff a validation notice in the exact form promulgated by the Consumer Financial Protection Bureau ("CFPB") that entitles Defendant to a safe harbor. See 12 U.S.C. § 5532; 12 CFR 1006.34(d)(2); 12 CFR Part 1006 Appendix B; and Certification of Attorney, Ex A and Ex B. Defendant has engaged in no other debt collection activity with respect to Plaintiff.

Plaintiff's sole basis for the present lawsuit was that the validation notice did not include the date the notice was sent. Neither 15 U.S.C. § 1692g nor 12 CFR 1006.34 require that the date the validation notice was sent be present. Federal law empowers the CFPB to create both rules on the implementation of Federal consumer financial law as well as model forms that if utilized by the covered person entitles said person to "be deemed to be in compliance with the disclosure requirements." 12 U.S.C. §§ 5512 and 5532(d). In the instant action, the CFPB created the Model Form B-1 that debt collectors are to utilize as part of the disclosure requirements of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA"). See Certification of Attorney, Ex B. The Model Form B-1 does not include a mail date. Therefore, Plaintiff's claims fail to state a cause of action and should be dismissed with prejudice.

**FACTUAL & PROCEDURAL BACKGROUND**

This matter arises from a single validation notice that Defendant sent to Plaintiff ("Validation Notice" or "Letter"). The Letter identifies that it is being sent by a debt collector in

1

connection with a debt due and owing to KeyBank, and provides pertinent information including the following:

- The account number;

- The type of debt;

- The itemization date of April 20, 2020, at which time the balance was $9,971.23

- That between the itemization date and the Letter date, neither interest nor fees were charged on the account;

- That between the itemization date and the Letter date, no payments or credits were applied to account; and

- That the debt remains at $9,971.23, which is the same amount it was as of the itemization date.

The Validation Notice provides the end date of the validation period as December 20, 2022, during which time Plaintiff could take certain action to dispute all or part of the debt. The Letter further provides that Plaintiff could request certain information relating to the debt and also access the CFPB website for more information about Plaintiff's rights under federal law. Finally, the Validation Notice provides an easy response method whereby Plaintiff could detach and return either Plaintiff's dispute, request for the name and address of the original creditor, or payment on the debt.

The Letter mirrors the Model Form B-1 promulgated by the CFPB along with all the required information under Federal law that provides a safe harbor for debt collectors. Notably, Plaintiff does not directly contest that the amount listed as being incorrect, that the identified creditor is incorrect, that he did not receive the notice within the validation period, or any other

issue with the Validation Notice.  Instead, Plaintiff focuses his sole issue on the absence of a date of the Letter, which is exactly how the CFPB drafted the Model Form B-1.

Stemming from the single act of sending of the Validation Notice to which Plaintiff only objects that the Letter was undated, as proscribed by the CFPB Model Form B-1, Plaintiff filed their lawsuit in Supreme Court of the State of New York on December 31, 2022, just days after the close of the validation period.  The lawsuit claims violations of the FDCPA, including allegations that Defendant (1) harassed, oppressed, or abused Plaintiff by sending the required validation notice; (2) used false, deceptive, or misleading representation or means by sending the required validation notice; (3) used unfair or unconscionable means to collect or attempt to collect the debt by sending the required validation notice; and (4) failed to properly provide the amount of the debt by sending the required validation notice.  As a result of the litigation solely concerns alleged violations of Federal law, Defendant removed the matter to this Court on  February 9, 2023

## LEGAL ARGUMENT

## I.    APPLICABLE LEGAL STANDARDS

### A.    MOTION TO DISMISS

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Even though it is not necessary to provide detailed factual allegations in a complaint, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).

In assessing the legal sufficiency of Plaintiff's claims, the court may consider the facts alleged in the complaint, as well as any document attached to it as an exhibit or incorporated in it by reference, documents that the plaintiff either possessed or knew about and upon which was relied upon in bringing the suit.  See Ostrander v. Unifund Corp., 2008 U.S. Dist. LEXIS 25040, *4-5 (W.D.N.Y. Mar. 28, 2008).  While the court must accept as true all of the well-pleaded facts set forth in the complaint, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits but are unsupported by any factual averments will not be accepted as true.  Id.

### B.    FDCPA AND CFPB

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(c).  A Senate Report evidenced the need of the FDCPA, wherein it chronicled abuses including: "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."  Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S. Rep. No. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696).  The law sets out numerous actions that are either prohibited or required, which include the following that is the basis of Plaintiff's four causes of action:

- First Claim – 15 U.S.C § 1692d – "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

- Second Claim – 15 U.S.C. § 1692e – "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

- Third Claim – 15 U.S.C. § 1692f – "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

- Fourth Claim – 15 U.S.C. § 1692g(a):

  Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

  **(1)** the amount of the debt;

  **(2)** the name of the creditor to whom the debt is owed;

  **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

  **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

  **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

In reviewing for a FDCPA violation, the Second Circuit Court of Appeals is guided by two principles:

**First**, "the FDCPA must be construed liberally to effectuate its stated purpose." … **Second**, "[i]n evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the least sophisticated consumer would be deceived by the

collection practice," looking to "the impression likely to be left upon the unsophisticated consumer."

<u>Wagner v. Chiari</u> & Ilecki, LLP, 973 F.3d 154, 165 (2d Cir. 2020) (citations omitted) (emphasis added).  The "'least sophisticated consumer' standard is an objective standard that seeks to protect "the naive" from abusive practices while simultaneously shielding debt collectors from liability for "bizarre or idiosyncratic interpretations" of debt collection letters."  <u>Greco v. Trauner, Cohen & Thomas, L.L.P.</u>, 412 F.3d 360, 363 (2d Cir. 2005) (internal citations omitted).

Similarly, to the FDCPA, the CFPB was created to "implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive."  12 U.S.C. § 5511(a).  The objectives of the CFPB include ensuring that:

> **(1)** consumers are provided with timely and understandable information to make responsible decisions about financial transactions;
>
> **(2)** consumers are protected from unfair, deceptive, or abusive acts and practices and from discrimination;
>
> **(3)** outdated, unnecessary, or unduly burdensome regulations are regularly identified and addressed in order to reduce unwarranted regulatory burdens;
>
> **(4)** Federal consumer financial law is enforced consistently, without regard to the status of a person as a depository institution, in order to promote fair competition; and
>
> **(5)** markets for consumer financial products and services operate transparently and efficiently to facilitate access and innovation.

12 U.S.C. § 5511(b).  To achieve its purpose and objectives, the CFPB is tasked to "issu[e] rules, orders, and guidance implementing Federal consumer financial law."  12 U.S.C. § 5511(c)(5).  <u>See also</u> 12 U.S.C. § 5512.  Furthermore, the CFPB was empowered to be able to create a "model form that may be used at the option of the covered person for provision of the required disclosures" and

that the use of such model form would entitle the covered person to "be deemed to be in compliance with the disclosure requirements."  12 U.S.C. §§ 5532(b)(1) and (d).

After the culmination of "a deliberative, thoughtful process spanning more than seven years," the CFPB enacted its final rules that are presently found in 12 CFR 1006 *et seq.* ("Regulation F").  CFPB, <u>Consumer Financial Protection Bureau Issues Final Rule on Consumer Disclosures Related to Debt Collection</u> (Dec. 18, 2020), *https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-issues-final-rule-on-consumer-disclosures-related-to-debt-collection/* [hereinafter titled "Dec 2020 CFPB Press Release"].  The Consumer Financial Protection Bureau Director Kathleen L. Kraninger commented on the release that, "Today's final rule provides clear rules of the road for debt collectors on how to disclose details about a consumer's debt and informs consumers how they may respond to the collector, if they choose to do so," and that "[o]ur final rule reflects our commitment to ensuring that consumers are better informed; informed consumers are empowered consumers."  <u>Id.</u>  The purpose behind the new regulations is set forth as follows:

> Purpose. This part carries out the purposes of the FDCPA, which include eliminating abusive debt collection practices by debt collectors, ensuring that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and promoting consistent State action to protect consumers against debt collection abuses. <u>This part also prescribes requirements to ensure that certain features of debt collection are disclosed fully, accurately, and effectively to consumers in a manner that permits consumers to understand the costs, benefits, and risks associated with debt collection, in light of the facts and circumstances.</u> Finally, this part imposes record retention requirements to enable the Bureau to administer and carry out the purposes of the FDCPA, the Dodd- Frank Act, and this part, as well as to prevent evasions thereof. The record retention requirements also will facilitate supervision of debt collectors and the assessment and detection of risks to consumers.

12 CFR 1006.1(b) (emphasis added).

The CFPB regulations brought clarity to the form and substance of the information required to be disclosed to consumers by debt collections pursuant to 15 U.S.C. § 1692g by the enactment

of Regulation F, specifically 12 CFR 1006.34 and the Model Form B-1.   Additionally, in furtherance of 15 U.S.C. § 1692k, Regulation F provides debt collectors a "safe harbor" from the information and form requirements of 12 CFR 1006.34(c) and (d)(1) if the debt collector utilizes the Model Form B-1.   12 CFR 10006.34(d)(2).   As previously noted, the CFPB's actions in implementing Regulation F, including the Model Form B-1 and the safe harbor, was to provide "clear rules of the road for debt collectors on how to disclose details about a consumer's debt." Dec 2020 CFPB Press Release.

## II.   NEITHER THE FDCPA NOR REGULATION F REQUIRE THE VALIDATION NOTICE BEAR ITS MAILING DATE

There is no requirement under either the FDCPA or Regulation F that a validation notice and its incorporated disclosures include a mailing date. See 15 U.S.C. § 1692g; 12 CFR 1006.34. It is even further obvious that there is no such requirement as the CFPB, the federal agency empowered to enact rules governing the FDCPA and who spent years drafting Regulation F, crafted a Model Form B-1 that does not include a mailing date, opting instead to require debt collectors to provide specific disclosures as to the debt to consumers and tying the debt amount to an identified itemization date and "today". See 12 CFR 1006.34(b)(3). The Validation Notice sent from Defendant to Plaintiff in this action complied with the requirements of both 15 U.S.C. § 1692g and 12 CFR 1006.34.

As the Letter was sent in compliance with the specific statutory and regulations governing validation notices, it is incongruent that the Letter and the absence of a mailing date could sustain Plaintiff's various claims, even more so as Plaintiff does not assert that any element of the Validation Notice was deficient, including the creditor, type of debt, account number, or balance. More specifically, the Letter did not harass, oppress, or abuse the Plaintiff; it did not provide false, deceptive, or misleading representation of the debt; and it was not unfair or unconscionable.  To

the extent Plaintiff legitimately thought that the singular Letter and its singular absent mailing date amounted to any of the foregoing prohibited conduct, that interpretation would be a result of this particular consumer's bizarre or idiosyncratic interpretation of the Letter. Such an interpretation does not further the goal of the FDCPA and CFPB in protecting the naïve consumer.

## III.   THE CFPB REGULATION F PROVIDES A SAFE HARBOR FOR DEBT COLLECTORS UTILIZING THE MODEL FORM B-1

The Validation Notice sent by Defendant is a mirror to the Model Form B-1 and as such Defendant is entitled to the safe harbor found in 12 CFR 1006.34(d)(2) as authorized by 12 U.S.C. § 5532 and 12 U.S.C. § 1692k. To rule that a consumer may maintain a lawsuit against a debt collector because the debt collector complied with Regulation F to the letter is against not only Federal law but also the public policy of the FDCPA, CFPB, and Regulation F. Federal law empowers the CFPB to enact rules to ensure that "consumers are provided with timely and understandable information to make responsible decisions about financial transactions," and that "consumers are protected from unfair, deceptive, or abusive acts and practices and from discrimination." 12 U.S.C. §§ 5511(b) and (c)(5). Federal law also sets forth that model forms created by the CFPB and utilized by a covered person would entitle the covered person a safe harbor from the disclosure requirements of the consumer financial law. 12 U.S.C. 5532. To allow the instant action to continue solely because Defendant utilized the model from issued by the CFPB pursuant to Federal law would sow chaos in the world of consumer debt collection.

## CONCLUSION

Defendant's only debt collection activity with respect to Plaintiff was sending an accurate validation notice as required by 15 U.S.C. 1692g in the form and substance required by 12 CFR 1006.34 by mirroring the Model Form B-1. Plaintiff's allegation of conduct sanctionable under the FDCPA all stem from the absence of a mailing date on the validation notice, which is exactly

how the model form reads.  Because neither the governing statute nor the governing regulation require the inclusion of a mailing date, and the Model Form B-1 specifically lacks such information, Plaintiff fails to state a claim upon which relief may be granted.  Furthermore, both Federal law and the governing regulations provides Defendant a safe harbor through the use of the model form, and as a result Plaintiff fails to state a claim upon which relief may be granted.

For the foregoing reasons, Defendant Wong Fleming, P.C. requests that this Honorable Court grant its Motion to Dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

Dated: March 13, 2023                    By: */s/ Dafney Dubuisson Stokes*
                                              Dafney Dubuisson Stokes, Esq.
                                              WONG FLEMING, P.C.
                                              821 Alexander Road, Suite 200
                                              Princeton, NJ 08540
                                              Tel: (609) 951-9520
                                              Fax: (609) 951-0270
                                              Email: dstokes@wongfleming.com
                                              *Attorneys for Defendant Wong Fleming, P.C.*